# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MAURICE WALKER, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 4:13 CV 2498 CDP |
| DOUG BAKER, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff Maurice Walker alleges that defendants, Farmington Correctional Facility employees Doug Baker, Dale White, and Catherine Amonds, violated his Eighth Amendment right to be free from cruel and unusual punishment when they failed to protect him from a sexual assault by his cell mate in July 2012. Before me now is defendants' motion for summary judgment. I will grant summary judgment as to Walker's claims against defendant Baker because plaintiff failed to administratively exhaust his claims against Baker. I will deny summary judgment as to Walker's claims against White and Amonds because there remain genuine issues of disputed material fact regarding whether and to what extent the defendants were aware that Walker's attacker posed a serious risk to his safety.

**Exhaustion**

Defendants argue that Walker failed to properly exhaust his administrative remedies in accordance with the Prison Litigation Reform Act by not timely filing his Informal Resolution Request and by failing to include sufficient detail in his allegations. The PLRA requires inmates complaining about prison conditions to exhaust prison grievance remedies before initiating a lawsuit. *See* 42 U.S.C. § 1997e(a). "[T]he benefits of exhaustion…include allowing a prison to address complaints about the program it administers before being subject to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007). It is the grievance procedure requirements of the correctional facility, and not the PLRA, that define the boundaries of proper exhaustion. *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014) (plaintiff failed to exhaust where, during the grievance process, he did not identify an official who was named as a defendant in the later lawsuit and prison grievance policy specifically required offenders to name individuals involved).

Here, the Missouri Department of Corrections' grievance policy requires an offender with a grievance to file an Informal Resolution Request within fifteen days of the alleged incident. [ECF 54-12, p. 0823]. An offender is provided one form for each complaint. After reviewing the institution's response to his IRR, an

offender may file an Offender Grievance form.  If the institution's response to the Offender Grievance form is not satisfactory, the offender may submit an Offender Grievance Appeal form.  After receiving the appeal response, "the offender has exhausted the grievance process." [*Id*. at 832].  The policy provides that, in completing an IRR, an offender should provide "whatever material/information is available" to him.  [*Id*. at 823].

In his IRR, completed in September 2012, Walker wrote that he was sexually assaulted by Jerome Nash and that officers White and Amonds told him they knew what Nash was capable of.  Next, in his Offender Grievance form, completed in October 2012, Walker asserted that he wanted a proper investigation to be taken; that medical did not do a rape kit on him; that he wanted proper actions taken against six house, the case workers, and the officers; and that he did not want to be messed with or be a target.  Finally, in his Offender Grievance Appeal, completed in December 2012, Walker alleged that the prison Rape Act was not followed, that he felt he was being played, and that he wanted proper help.  In response to each level of grievance, the prison staff or administration fashioned a written response that considered the substance of his complaint and denied his grievance.

Walker's claims here are not barred for his failure to timely initiate the grievance procedure.  The Eighth Circuit has held that the PLRA's exhaustion

requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits. *See Hammett v. Cofield*, 681 F.3d 945, 947-48 (8th Cir. 2012). There can be no dispute that Walker's grievance was denied, at every administrative level of review, on the merits and not for its failure to comply with procedural filing deadlines. Therefore his failure to timely file an IRR does not constitute a failure to exhaust. *See id*. at 948.

Defendants argue that Walker's failure to specifically mention Baker in the grievance process as well as the generally "sketchy" nature of Walker's grievance allegations constitute a failure to comply with the offender grievance policy. They aver that Walker failed to comply with the policy's mandate that the complaining offender provide all information that is available him.

As a threshold matter, Walker's failure to name Baker in his grievance documents does not, by itself, preclude his claim against Baker in this court. The DOC procedures do not mandate the naming of every official, and the Supreme Court has made it clear that failing to name an individual at the grievance stage does not automatically make a grievance inadequate under the PLRA. *See Jones*, 549 U.S. at 219 ("[E]xhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances."). However, here, Walker not only failed to name Baker, he failed to allege any of the facts of his claim as it relates to Baker. At the time of Walker's assault, Baker was Walker's case

manager. In his complaint, Walker asserts that as soon as Jerome Nash was moved into his cell, Walker complained to Baker that he was feeling threatened by Nash. But Walker's administrative grievance filings gave no indication that he spoke to Baker or any case manager about Nash or about feeling threatened by Nash before the rape. The closest Walker came to making an allegation against Baker was to say in his Offender Grievance, "I want proper actions taken against six house and the caseworkers." This statement, put within the context of the remainder of his grievance, gives the impression that Walker felt the caseworkers did not adequately investigate the rape or that they were retaliating against him for filing a grievance. It does not suggest that Walker felt the caseworkers failed to prevent Nash's assault. This is not enough. Under the DOC's grievance policy Walker was required to provide whatever information was available to him at the time of his IRR filing. Even if he had not known Baker's name or could not recount precise words spoken during his exchange with Baker, Walker would have known and should have communicated the nature of Baker's wrongdoing. Because of all of the above, I conclude that Walker's claim against Baker was never exhausted and is precluded in this litigation.

Walker's claim against White and Amonds was properly exhausted, however. In his grievance documents Walker made essentially the same claims

against White and Amonds that he is making in this lawsuit. I conclude that he properly exhausted his administrative remedies against these two defendants.

**<u>Failure to Protect</u>**

During the relevant time period, defendants White and Amonds were corrections officers at Farmington who supervised inmates in the same wing where Walker was housed. They argue that plaintiff's failure to protect claim against them fails as a matter of law because the undisputed facts demonstrate they were not deliberately indifferent to plaintiff's health or safety.

The Eighth Amendment imposes on prison officials the duty to "provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Prison officials are required to take reasonable measures to "protect [detainees] from violence at the hands of other prisoners." *Id*. at 833(internal punctuation and quoted case omitted). The Eighth Amendment imposes this duty because being subjected to violent assaults is "not 'part of the penalty that criminal offenders pay for their offenses.'" *Id*. (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

To prevail in a suit under 42 U.S.C. § 1983, an inmate seeking damages from prison officials for failing to protect him from assault by another inmate must show that the prison official was deliberately indifferent to a "substantial risk of serious harm." *Young v. Selk*, 508 F.3d 868, 872 (8th Cir. 2007) (quoting *Farmer*,

511 U.S. at 828). In doing so, a prisoner must satisfy two requirements, one objective and one subjective. The first requirement tests whether, viewed objectively, the inmate was "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. The second requirement is subjective and requires that the inmate prove that the prison official had a "sufficiently culpable state of mind." *Id*. (quotation omitted). The subjective inquiry regarding an official's state of mind is one of "'deliberate indifference' to inmate health or safety." *Id*. (quoting *Wilson v. Seiter*, 501 U.S. 294, 302–03 (1991)). An official is deliberately indifferent if he or she actually knows of a substantial risk and fails to respond reasonably. *Whitson v. Stone Cnty. Jail*, 602 F.3d 920, 923 (8th Cir. 2010). *See also Walls v. Tadman*, 762 F.3d 778, 782 (8th Cir. 2014).

Here, Walker testified in his deposition that on July 3, 2012, the day Nash moved into his cell, he and Nash had a confrontation about who would have the bottom bunk in their cell and Nash made him feel threatened. He testified that on the same day, he told White and Amonds he felt threatened by Nash,[1] and they told him they knew Nash and what he was capable of. Nash eventually raped Walker six days later, on July 9, 2012. In her discovery responses, Amonds indicated Nash was a bully who was known to strong-arm other offenders. Before the sexual assault occurred, Nash had a history of conduct violations, though only one

---

[1] Amonds and White dispute this. Amonds claims to have spoken with Walker but testified he did not tell her he felt threatened. White claims not to remember speaking with Walker at all.

involved a physical struggle.  Defendants have pointed out, and it is undisputed, that Walker did not tell the officers that he feared a sexual assault, nor did he ask for protective custody.  Without these pieces of information, defendants aver they could not have understood the seriousness of the threat.  However, in his deposition White indicated that if an offender approached him and said he was in fear of anything, White would put the offender in protective custody as a matter of course.  This suggests that an offender need not necessarily express a need for protective custody in order for a guard to perceive a risk of serious harm.  *Cf. Young*, 508 F.3d at 875.

At the summary judgment stage, I am required to construe the facts in the light most favorable to the nonmovant.  *See Small v. McCrystal*, 708 F.3d 997, 1003 (8th Cir. 2013) ("Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law").  Based on the facts above, there remains a disputed issue of material fact as to whether defendants knew of and failed to reasonably respond to a substantial risk of serious injury to Walker.  Accordingly, defendants are not entitled to summary judgment on Walker's failure to protect claim.

**Qualified Immunity**

Defendants have also argued the claims against them should be dismissed because they are shielded by qualified immunity. "Qualified immunity protects a government official from liability in a section 1983 action unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." *Henderson v. Munn*, 439 F.3d 497, 501 (8th Cir. 2006) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To overcome the defense of qualified immunity, a plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kansas City Police Dep't.*, 570 F.3d 984, 988 (8th Cir. 2009). The court may address either prong first. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Because I have already concluded that the evidence, viewed in a light most favorable to plaintiff,[2] is sufficient to support a conclusion that the Constitution was violated, the defendants are not entitled to qualified immunity unless I determine that Walker's Eighth Amendment right was not "clearly established." "A right is clearly established if its contours are sufficiently clear that a reasonable

---

[2] In qualified immunity cases the court should not deny summary judgment any time a material issue of fact exists on the constitutional claim. Rather, the court should determine which facts are genuinely disputed and then view those facts in a light most favorable to the non-moving party. *See Jones v. McNeese*, 675 F.3d 1158, 1161-62 (8th Cir. 2012).

official would understand that what he is doing violates that right." *Smith v. City of Minneapolis*, 754 F.3d 541, 546 (8th Cir. 2014) (internal citation and quotation marks omitted). A case directly on point is not required, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citing *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011)).

Well before Walker's claim arose it was clearly established law that prison officials are required under the Eighth Amendment to take "reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832. There was also Eighth Circuit precedent indicating that actual knowledge of a substantial risk of harm may be imputed to prison guards who have been told an inmate is being threatened. *See Young*, 508 F.3d at 872. In light of all of this, and construing the facts in Walker's favor, I conclude that reasonable officers in defendants' position would have known that that their failure to act to protect Walker from assault violated Walker's clearly established Eight Amendment right. *See id.* at 875.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [46] is **GRANTED** as to the claim brought against defendant Doug Baker.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment [46] is **DENIED** as to the claims brought against defendants Dale White and Catherine Amonds.

This case will be set for trial by separate order.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 30th day of August, 2016.